(No. 48824.—

ANTHONY KREISER, Appellee, v. THE POLICE BOARD OF THE CITY OF CHICAGO, *et al.,* Appellants.

*Opinion filed November 30, 1977.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Roseann Oliver, and Jerome A. Siegan, Assistant Corporation Counsel, of counsel) for appellants.

O'Brien & Coleman, of Chicago, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiff, Anthony Kreiser, a patrolman of the police department of the city of Chicago, was discharged following a hearing before the Police Board of the City of Chicago (the Board), pursuant to section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—18.1), on charges of violating certain rules of the department. The plaintiff filed a complaint for administrative review in the circuit court of Cook County against the Board and the superintendent of police. The circuit court sustained the findings of the Board and dismissed the complaint. On appeal the Appellate Court for the First District reversed (40 Ill. App. 3d 436), and we granted the defendants' petition for leave to appeal.

What occurred is not in dispute. The events which led to the plaintiff's discharge took place on April 12 and 13, 1972. The plaintiff was at that time assigned to the Fillmore police district, whose headquarters is located at 4000 West Fillmore Street, which is about 1000 south. At 12:45 on April 12, the plaintiff was to appear in traffic court, which is located at 321 North La Salle Street. Forty-five minutes are allowed an officer to travel from the station to traffic court. The plaintiff left the police station at 11:10 a.m. He did not sign out at the station, but did inform his partner that he was going to lunch and then to traffic court. Earlier that day he also informed his commanding officer of his date in traffic court. Patrolmen are allowed 30 minutes for lunch.

The plaintiff testified that when he left the station he proceeded in his personal car to a restaurant where he had lunch and then met with an electrician, by prearrangement, to give him the keys to a building which the plaintiff had contracted to purchase.

At about 12:05 the plaintiff was found in his personal car at 3904 South Western Avenue by a police department inspector. The plaintiff, who was in uniform, told the inspector that he was on his lunch hour. His car did not display a front license plate or a city vehicle license windshield sticker. It was stipulated at the hearing that the plaintiff had previously purchased the plate and the sticker, but had not affixed them because the front end of his car had been damaged in an accident and was in the process of being repaired. The plaintiff thereafter went to traffic court, arriving at about 12:40 p.m. and leaving at about 4:20 p.m.

On the following day, in answer to a question from his commanding officer, Lieutenant Harold W. Brown, the plaintiff falsely stated that he had not been driving his personal car on the previous day. Asked on direct examination why he had made this misstatement, the plaintiff said: "Well, I felt that if I told him I had driven the car, the possible consequences would be greater to me, might create a greater incident for me regarding this whole incident. At that time I was sort of afraid regarding the consequences of this whole incident which occurred the prior day."

On the 13th of April, Lieutenant Brown directed the plaintiff to submit a report concerning the events of April 12 explaining why the plaintiff had not signed out for court, where he had gone, and why he had left his assigned post as early as 11 o'clock. The report was submitted, but not until the morning of the 14th, following a repeated order to do so from Lieutenant Brown.

The Board found the plaintiff had violated Rule 2 of the department, which prohibits "[a]ny action or conduct which impedes the department's efforts to achieve its policy and goal or brings discredit upon the department." It found that the plaintiff had violated Rule 2 in five respects:

(1) He operated his vehicle while it was not properly licensed;

(2) he failed to obey the order of Lieutenant Brown to submit a written report;

(3) he gave a false oral statement to Lieutenant Brown;

(4) he "falsely stated to a superior officer [the inspector] that he was on his lunch period when in fact he had not made any notification or obtained permission from a superior for a lunch break"; and

(5) he left the police station without being properly relieved and without logging out.

The appellate court set aside the fourth finding on the ground that there was no evidence that the plaintiff was not on his lunch break at the time, but held that the remaining specific findings by the Board were not against the weight of the evidence. It held, however, that those findings did not constitute "cause" for discharge, a requirement contained in section 10—1—18.1 of the Code. The court stated:

"The courts have construed 'cause' to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. *** In a proceeding to remove a police officer, it is the function of the court to decide whether the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary; ***." 40 Ill. App. 3d 436, 441.

The court did not judge that the infractions on the part of the plaintiff were sufficiently substantial or related to the performance of the plaintiff's duties to call for the

maximum sanction of discharge. It accordingly reversed the findings of violation by the Board and the judgment of the circuit court affirming those findings.

We agree with the appellate court that the plaintiff's discharge cannot stand. The court's decision in this regard is in accord with the holding in *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 361. (See also *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 1075-76.) The effect of the appellate court's reversal, however, is to restore the plaintiff to duty status with the police department without any alternative sanction having been considered. In our opinion the proper disposition to make here is one similar to that which this court made in *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 361, namely to remand the matter to the Board for consideration of what action, if any, should be taken. *Cf. Stanton v. Board of Fire & Police Commissioners* (1976), 37 Ill. App. 3d 108, 109-10.

Accordingly we affirm the appellate court's reversal of the circuit court, but in addition we remand the cause to the Board for reconsideration.

*Affirmed and remanded.*